[Civ. No. 22192.   Second Dist., Div. One.   Feb. 28, 1957.]

ELIZABETH N. RUDE, Respondent, v. JACK L. RUDE, Petitioner.

Jones, Lane, Weaver & Daley and Roy A. Weaver for Petitioner.

Harry C. Cogen for Respondent.

FOURT, J.—This matter involves the petition for, issuance of, vacation and discharge of, a writ of supersedeas.

The application of the defendant for the writ of supersedeas, among other things, sets forth that there is now pending in the Superior Court in Los Angeles County, a divorce action between the above entitled parties; that pending further proceedings, the plaintiff brought on for hearing a motion for custody of the two minor children of the parties, support for the children, attorney's fees and costs. The hearing was on oral and documentary evidence and affidavits. After four and one-half days of hearings, the trial court ordered that the defendant deliver both of the minor children in question into the custody of the plaintiff on or prior to December 15, 1956, at the plaintiff's home in Los Angeles County, and that the defendant pay to the plaintiff for the support and maintenance of the children $500 per month, to continue until the further order of the court.

The defendant petitioned the court for a stay of the order pending appeal, and such petition was denied after a hearing. An appeal from the order in question was perfected and is now pending.

The defendant and petitioner here contends that he and his wife, together with the children, did, from 1947 to 1952, reside in Beverly Hills, California, and that in 1952, they leased their home and went to Europe, and further, that in 1954, they sold the home. Two rather large and quite valuable farms, located in Stanislaus and San Joaquin Counties, were at all times owned by the parties and are still owned by them, and are now before the court below for disposition. In about July, 1952, the parties to the action and their children left California, and in August 1952, they established a residence in Geneva, Switzerland, where they continued to reside until September 1, 1955, on leased property. During this period of time the defendant made two or three trips a year to California in connection with the farming properties, and the plaintiff came to the United States a couple of times for visits.

The defendant further contends that the plaintiff left Geneva and came to California in about November, 1955, and that the defendant and the children continued to stay in Switzerland and still reside there, that prior to her leaving for California plaintiff gave custody of the children to the defendant and that she had arranged to institute an action for divorce in the Swiss courts. After the plaintiff left Switzerland and came to the United States, the defendant instituted an action in divorce in the Swiss courts, and among other things, charged the plaintiff herein with adultery, and that action in Switzerland is still pending. The defendant further contends that he has good grounds for an appeal from the order in question and states that he believes the order was in excess of the court's jurisdiction, an abuse of the court's discretion and not in any respect supported by the evidence.

The children concerned in this proceeding are John Rude, aged about 15 years, and Paul Daniel Rude, aged about 8 years. The daughter, Judith Rude, is now of the age of 21 years. The two boys attend school in Switzerland.

It is also a contention of the defendant that if he complies with the order the school term of the children will be broken, their present family life will be disrupted and cause them great unrest.

The plaintiff has answered each and every contention of the defendant. She set forth, among other things, that the legal residence and domicile of the parties and the children was directly submitted to the trial court. Further, that the parties were extremely well to do financially, and that the European trip in 1952 was only an extended vacation trip; that substantially all of the assets of the parties were in California and that Mr. Rude had no business or occupation in Europe and lived entirely from the income of the California assets. Much documentary evidence was introduced consisting of about 50 exhibits, such as for example, income tax returns signed by the defendant wherein he gave Los Angeles as his residence. It was further pointed out that the defendant unfavorably compared American institutions with others and that the boys were being taught foreign philosophies. John, the older boy, wrote to his mother on May 1, 1956, in part, "I am having a wonderful time in Geneva and on our vacation trips. I want to keep on living here in Europe." The petitioner was not present at the hearing. However, his attorney as a witness for the plaintiff testified that he had met and consulted with his client in Denver,

Colorado, less than three weeks before the hearing. It is the claim of the plaintiff, and she asserts that she has consistently urged that the petitioner's alleged residence in Switzerland was not bona fide, was false and fictitious and was advanced solely for the purpose of avoiding the jurisdiction of the California courts, and that the trial court properly determined the matter, that it would be for the best interests of the children that they be placed with the mother, the plaintiff herein, and that a writ of supersedeas would completely nullify the order of the trial court.

A writ of supersedeas issued from this court on December 27, 1956, wherein the trial court was restrained from enforcing those portions of the order appealed from which commanded the defendant to deliver the two boys to the plaintiff, and which ordered him to pay $500 per month support and maintenance for the boys. The petition was denied as to the other portions of the order. The stay was conditioned upon the record of appeal being filed without any delay and that appellant's opening brief be filed within rule time thereafter, and further, that the reply brief be within rule time.

Shortly thereafter, the plaintiff petitioned for a rehearing wherein she set forth, among other things, that "On January 4, 1957, the official court reporter advised plaintiff's counsel that defendant's counsel, Roy Weaver, had requested that the preparation of the reporter's transcript on appeal be delayed as long as possible," and accompanying such assertion was an affidavit of her attorney in support thereof. At the oral hearing defendant's counsel vehemently denied any such course of conduct and filed an affidavit to such effect. The court reporter indicated that he would not make a statement under oath with reference to the matter.

The plaintiff further set forth that the defendant has now filed an answer to the first amended complaint for divorce and that the case is now at issue. It was stipulated at the oral hearing on the petition for a rehearing that this court might consider the entire file and record in determining this matter. In reading the answer, it is interesting to note that the defendant in answering an allegation to the effect that he had lived openly and notoriously with one Tania Savoy in Switzerland, Italy and elsewhere, denied the same and denied that he took her to the United States with him on a trip, but admitted that she did travel from Switzerland to the United States at the same time by the same means of transportation that he used, and that she really made the

trip with him at the invitation and request of his wife. The plaintiff alleged in her first amended complaint that the defendant committed adultery with Tania Savoy on several different times, occasions and places. The defendant, in his answer, denies all such assertions, excepting for one occasion in Monte Catini, Italy, about August 23, 1955, and on that occasion, he states that Tania Savoy was personally, by the hand, led to the bed of the defendant by the plaintiff, and that she and plaintiff requested and induced the defendant and Tania Savoy to remain in bed together. It is not disclosed whether the children were along when such amenities were being engaged in, but whether they were or not, it certainly discloses sharply a very decided lack of the qualities of fundamental decency and sound character on the part of either or both of the parties.

The defendant, in a further affirmative defense to his conduct, sets forth that he has a strong feeling for the children and he purports to be interested in their "cultural development and social graces"; that early in 1955, his wife and Tania Savoy set about a campaign whereby his love for his wife was to be deadened and, in substance, Tania's love was to replace that of his wife's. He insists that he did his very best to resist but without avail, and that ultimately "this defendant engaged in family life and cohabitation with the said Tania Savoy." We presume that such phraseology is one way of answering a pleading where adultery is charged, without actually denying it, and at the same time not frankly admitting it as he did in reference to the August, 1955, episode. In any event, in our opinion, it in part demonstrates that the trial court was well within the bounds of sound discretion and that his analysis of the whole matter, even though he did not have the answer before him at the time he heard the original order to show cause, was substantially correct.

The petitioner herein relies heavily upon *In re Chandler,* 36 Cal.App.2d 583 [97 P.2d 1048]. ▮ However, we are of the opinion that the language as used in *Sampsell* v. *Superior Court,* 32 Cal.2d 763, 776 [197 P.2d 739], definitely sets at rest the proposition whether the superior court has jurisdiction over the subject matter of a custody proceeding such as is presented here. In the case of *Maloney* v. *Maloney,* 67 Cal.App.2d 278, 280 [154 P.2d 426], cited with approval in the Sampsell case, the court stated: "Although the children are beyond the territorial limits of California, they are

still under the jurisdiction of the court below . . . , which attached at the time the suit was filed."

In the case of *Currin* v. *Currin*, 125 Cal.App.2d 644, 652, 654 [271 P.2d 61], the district court, citing the Sampsell case as its authority, held as follows:

"Defendant challenges the jurisdiction of the court over the minor child of the parties to this action. Concededly, the legal residence and legal domicile of plaintiff mother was in the State of California. Defendant father contends that his was in the State of North Carolina. If the court below was correct in determining that defendant father was a resident of the State of California at the time of the commencement of this action, then it necessarily follows that California was the legal residence and domicile of the child, and that the court was clothed with jurisdiction to make its order *in re* custody of said child.

. . . . . . . . . . . . .

"While the evidence affecting domicile of defendant was in conflict, such a situation is not uncommon, and the decision in such cases rests exclusively with the trier of facts unless it can be said that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below  Such is not the situation confronting us in the case at bar. We are persuaded that the instant case comes within the purview of the reasoning adopted in the case of *Sampsell* v. *Superior Court*, 32 Cal.2d 763, 773, 777, 778, 780, 781 [197 P.2d 739]."

This court recently had occasion to set forth the background of section 949a, Code of Civil Procedure, in *Faulkner* v. *Faulkner*, *ante*, p. 102 [306 P.2d 585], and no useful purpose would be served in relating the same matter here. Suffice it to say that appellate courts should not nullify the plain statutory purpose of the section in question by issuing a writ of supersedeas. (*Private Investors, Inc.* v. *Homestake Min. Co.*, 11 Cal.App.2d 488, 491-492 [54 P.2d 535]; *United States of America* v. *Berg*, 202 Cal. 10, 14-15 [258 P. 942].)

We are not here indicating which of the parents is, in our opinion, best fitted to care for and attend to the said children. The trial judge determined that question upon substantial evidence and he ordered what he believed would be for the best interests of the children, which, in our opinion, was proper. (*Taber* v. *Taber*, 209 Cal. 755, 756 [290 P. 36]; *Matter of Cozza*, 163 Cal. 514 [126 P. 161, Ann.Cas. 1914A 214]; *Lampson* v. *Lampson*, 171 Cal. 332 [153 P. 238]; *Foster*

v. *Foster*, 8 Cal.2d 719 [68 P.2d 719]; *Davis* v. *Davis*, 41 Cal.2d 563, 565 [261 P.2d 729]; *Holsinger* v. *Holsinger*, 44 Cal.2d 132, 135 [279 P.2d 961].)

We believe that probable error has not been made to appear in this case. ██ It was appropriately said in *Nuckolls* v. *Bank of California*, 7 Cal.2d 574, at 578 [61 P.2d 927]: "In the second place, probable error has not been made to appear. From the rather incomplete and unsatisfactory showing, it appears that there were at least two grounds for the trial court's judgment, either of which would be sufficient to sustain it. We cannot presume error. This court must consider the rights of respondents as well as those of appellants. Affirmances must be contemplated as well as reversals; in fact, until the contrary is shown, the presumption is in favor of the lower court's decision. ██ A *supersedeas* is issued usually to protect the appellate court's jurisdiction. If a stay can be granted only at the risk of destroying rights which would belong to the respondent if the judgment is affirmed, it cannot be said to be necessary or proper to the complete exercise of appellate jurisdiction (*Hulbert* v. *California Portland Cement Co.*, 161 Cal. 239 [118 P. 928, 38 L.R.A.N.S. 436]; 2 Cal.Jur. 465, § 217.)"

██ The presumption is in favor of the decision of the trial court and we cannot presume error.

We, of course, are not concerned at this time with the ultimate decision which should be made in this proceeding. (*Food & Grocery Bureau* v. *Garfield*, 18 Cal.2d 174, 178 [114 P.2d 579].) ██ Furthermore, the petitioner in this instance requested the trial court for a stay of proceedings under the provisions of section 949a, Code of Civil Procedure, and upon a hearing being held the motion for such a stay was denied. The ruling of the trial judge should not be disturbed unless it can be shown that there was a manifest abuse of discretion.

██ As heretofore indicated, the basic fundamental matter before the court was what is the best for the children. The morals or lack of morals of either of the parents, their financial condition, the age of the children, their temperament and the love of either or both parents are all factors to be considered by the trial court in determining the best interests of the children. Necessarily, such proceedings are left to the sound discretion of the trial court and whatever it determines will not be set aside except it should clearly appear that there has been an abuse of discretion. (*Crater*

v. *Crater,* 135 Cal. 633, 635 [67 P. 1049].) On reconsideration, we find no abuse of discretion in this case.

The writ of supersedeas heretofore issued is vacated and discharged, and the petition is denied.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 25, 1957. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.