[Civ. No. 22192. Second Dist., Div. One. Aug. 15, 1957.]

ELIZABETH N. RUDE, Respondent, v. JACK L. RUDE, Appellant.

Jones, Lane, Weaver & Daley and Roy A. Weaver for Appellant.

Harry C. Cogen for Respondent.

FOURT, J.—This is a motion to dismiss an appeal.

The plaintiff brought an action in divorce in Los Angeles County wherein, among other things, in the first amended complaint, she alleged in substance that she and her husband were, at the time of the commencement of the action, and for more than one year before, had been residents of Los Angeles County; that three children were born as the issue of the marriage (two of whom are now minors); that there was property of the parties worth considerably in excess of $2,500,000; that the husband now lives in Switzerland to avoid the jurisdiction of the California courts; that he transferred various bank accounts from California to Switzerland, and other matter not particularly pertinent here. She sought in her action, among other things, a divorce, the custody of the minor children who are presently in Switzerland with their father, an award for her support and maintenance, an award for attorney's fees and court costs pending trial. The

trial court, on December 3, 1956, after a lengthy contested hearing, made findings that the parties and their children were, at and prior to the time of the filing of the action, residents of Los Angeles County; the court also found that the mother was a fit and proper person to have the custody of the minor children and that it would be to the best interests and welfare of the minor children that they be in the custody of their mother, and ordered the husband to deliver the minor children into the custody of the wife; further, the court ordered the husband to pay to the mother $500 per month for the support and maintenance of the minor children, and to pay to the attorney for the wife the sum of $5,000, the balance to be fixed and awarded at the time of trial, and further ordered that the husband pay to the wife $2,500 on account of costs.

The husband filed an appeal in this court from the orders so made, which appeal is the subject matter of the motion now before us.

On or about March 8, 1957, the trial court made an order requiring the husband to pay to the attorney for the wife $1,500 attorney's fees and $800 in costs to the wife in connection with the appeal. Apparently, it is true that the husband has failed to comply with each and every order made by the court. No order has been made or issued staying any of the proceedings in respect to the order of March 8, 1957, and no bond has been posted to stay execution or to stay the proceeding. The husband petitioned for a writ of supersedeas as to the orders of December 3, 1956, which was disposed of by this court in *Rude* v. *Rude,* 148 Cal.App.2d 793 [307 P.2d 679] (February 28, 1957).

On May 3, 1957, a hearing was held in the trial court upon the wife's two orders to show cause in re contempt, and the husband's two motions to dismiss the contempt proceedings. Upon stipulation, the order to show cause in re contempt, which pertained to the custody and support of the minor children was dismissed. The motions to dismiss were argued and denied. The court then found, with reference to the December 3, 1956 order directing the husband to pay $5,000 attorney's fees and $2,500 costs, that the husband had the ability to pay but wilfully refused, and was found in contempt of court; and with regard to the order of March 8, 1957, ordering the husband to pay $1,500 attorney's fees and $800 costs, that the husband had the ability to pay but wilfully refused, and was found in contempt of court.

On May 6, 1957, the husband was sentenced to five days in jail and fined $500 for each of the contempts, the terms in jail to run consecutively, and further the court ordered the husband to pay to the attorney for the wife $500 as additional attorney's fees. A bench warrant and commitment were to issue forthwith on each sentence.

The wife has moved this court to dismiss the husband's appeal upon the grounds that he has now been adjudged guilty of contempt of court in failing to comply with the order of December 3, 1956, ordering the husband to pay $5,000 attorney's fees and $800 costs, which order, as. heretofore stated, is a subject matter of the pending appeal, and that the same thing holds true of the order of March 8, 1957; that the husband is a fugitive from justice and is in contempt of court and refuses to submit himself to the orders and processes thereof, and therefore he is not entitled to invoke the aid of this court.

The husband was not personally present at any of the hearings; he was, however, represented by counsel on each occasion, except at the sentencing on May 6, 1957. At the oral argument, counsel for the husband argued that his client could not repeatedly come to California to appear in the proceedings here. In this connection it is interesting to note that prior to the commencement of the divorce action by the wife in California, the husband frequently came to California on business trips, and met and conferred with a member of the firm of attorneys who have represented him throughout the case in Denver, Colorado, less than three weeks before the hearing in 1956. (*Rude* v. *Rude, supra.*)

It is clear to us, from the course which the husband has followed in this case, that he has no intention of complying with any order of the California courts unless it should suit his purpose to do so. As said in *Knoob* v. *Knoob*, 192 Cal. 95, at page 96 [218 P. 568] : ''It is very clear that the appellant has determined to set at naught the due process and orders of the courts of California, and does not intend to obey their mandate respecting. . . .''

In his affidavit in opposition to the motion to dismiss, the husband sets forth, among other things, that he claims residence in Switzerland; that he brought an action for divorce in Switzerland and that the Swiss courts acquired jurisdiction of the matter between the parties; that he relies upon the Swiss orders and decrees; that he does not have any income

whatever from any source other than the income produced by his interest in the farms located in California, which are presently in the hands of a receiver appointed by the Los Angeles Superior Court in this action. We note that in the so-called Swiss decree it is set forth that the husband is without occupation, and resides in the hotel Metropole, Geneva; that he "owns a substantial bank account and informed several persons of his intention to buy a house in Geneva." The husband, apparently, makes no contention whatsoever that he does not have sufficient money immediately available to comply with the orders of the California court. Furthermore, in the Swiss decree it is set forth: "AND WHEREAS she [Mrs. Rude] herself admitted before the Appellate Court of California that she was to return to Switzerland for the purpose of obtaining a divorce (s. pet. doc. 99), and whereas her attorney stated that he 'recognized that Mr. and Mrs. Rude have a legal residence in Switzerland (s. same doc., *in fine*)." So far as this court is aware, such a statement is wholly untrue and false because no such statement or statements appear in the record of our proceedings. Counsel for the husband, at the oral argument in answer to a question as to whether the statement was true or false, said, among other things: "Well—your honor, no I don't a—I've read that—I don't know whether—I don't know what it means. . . . It creates an inference, I realize. It is not so, and it creates also the inference that we must have told him that. But I certainly can say of my own knowledge that since I've been in this office of Jones, Lane, Weaver and Daley, no such thing has been said. I am somewhat familiar with the brief that Mr. Daley wrote, because I wrote—participated in part of it, but nothing of that sort was said. . . . I can't explain it because I don't know. . . . No, no sir. I am certain of that. I know this much—that we never—that no one from this firm, at least from the file and my own personal knowledge, never represented in any affidavit that that happened, because it obviously isn't so."

Since the oral argument there has been directed to us for our attention a copy of the Swiss Appellate Court judgment which, in effect, affirms the Swiss trial court. The Swiss Appellate Court adopted, for all intents and purposes, the findings and conclusions of the Swiss trial court as its own, stating, "it will be sufficient for this Court to retain, adopting them as its own for the decision hereto, . . ." In other words, in at least one respect the appellate court's judgment

in Switzerland is based upon what we know, as of our own knowledge, to be an untruth.

Further at the oral argument, it was stated by the wife's attorney that the husband had assigned to the adult daughter all of his interest in the estate of his mother, which was being probated in San Francisco, for the sum of $50,000; that a writ of execution issued from the Los Angeles Superior Court upon the judgment in favor of the wife's attorney, and was returned by the sheriff of San Francisco as being unsatisfied. The husband's counsel, in answer, did not deny that such had taken place, but simply stated that there was no showing that the husband had received the $50,000 mentioned in the assignment. It was also brought out at the same time that the husband had transferred to his attorneys, for an undisclosed amount, all of his interest in the estate of his father, which is also being probated in California.

In *MacPherson* v. *MacPherson*, 13 Cal.2d 271, 277 [89 P.2d 382], the appellant secluded children in a foreign country and "wilfully and purposely evaded legal processes and contumaciously defied and nullified every attempt to enforce the judgments and orders of the California courts, including the very order from which he seeks relief by this appeal." The court, in determining the case said, among other things, at pages 277-279: "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state. (Citing cases.)

"In *Weeks* v. *Superior Court, supra,* [187 Cal. 620 (203 P. 93)] the petitioner, having removed a minor, and while contumaciously keeping the child outside of the state in order to prevent the husband from gaining possession and custody in accordance wtih the terms of an interlocutory decree of divorce, applied to this court for writ of mandate to compel the superior court to enter a final decree. This court, citing the above rule, held that petitioner should not be allowed to make application for a final decree of divorce until she had submitted to the lawful order of the superior court in relation to the custody of the child, or otherwise purged herself of the contempt.

"Again, in *Knoob* v. *Knoob*, 192 Cal. 95 [218 P. 568], while counsel for appellant were prosecuting her appeal from a modified decree of custody, appellant removed both herself and the minor to the Republic of Guatemala in violation of the terms of the decree appealed from. The respondent there-

upon moved to dismiss the appeal upon the ground that 'the appellant was a fugitive from justice and in contempt of court, and for that reason not entitled to invoke the aid of the court.' Granting the motion to dismiss, this court said: 'But one conclusion can be reached from the foregoing facts. It is very clear that the appellant has determined to set at naught the due process and orders of the courts of California, and does not intend to obey their mandate respecting the custody of the minor child. Under such circumstances she is not entitled to press her appeal in this court. By her appeal she is seeking the court's aid, and it is manifestly just and proper that in invoking that aid she should submit herself to all legitimate orders and processes. . . . Her past actions indicate that not only is she determined to set at naught the authority of the trial court, but that her attitude will be the same toward any judgment or order made by this court in disposing of her appeal. The appeal is dismissed.'

. . . . . . . . . . . . . .

"Appellant complains that the court had no jurisdiction to make an allowance of attorneys' fees after the services had been rendered, or an allowance of costs after the expenditures had been made. Therefore, he argues, a portion at least of the order appealed from is void, and an appeal will lie even though he may be in contempt of court. This argument overlooks the fact that even though a portion of the order appealed from may be void, or erroneous, or unsupported by sufficient evidence, nevertheless the adjudication of contempt is presumably valid, and until that contempt is purged appellant is not entitled to a hearing before an appellate tribunal. The merits of the claims urged by him in support of his appeal will not be determined, nor will the appeal be heard while he persists in his contumacious attitude."

This is not the case where the court ordered the husband to do something that he could not do without substantial prejudice to his rights. Among other things, the husband, in this instance, could have deposited the money in question with the clerk under proper conditions, or he could have deposited a bond, and still have protected his rights on appeal. But, he has seen fit to ignore completely the orders of the court and to do absolutely nothing toward compliance.

The husband's attitude seems to be that if the case is decided in his favor it will be quite all right, but if it is not so decided he will be out of reach of the court, so that no matter what is done or what decision is made, he will con-

tinue to do just as he has done in the past, namely, pay no attention whatsoever to any order of any court in California insofar as complying with any such order is concerned. To sanction that course of conduct on the part of such a litigant would necessarily bring the court into contempt.

The husband cannot, with any propriety, ask this court to hear his claims and thereafter render him assistance, while he stands in an attitude of complete contempt to any and all legal orders and processes of the courts of this state, which he seeks to avoid through the intervention of an appeal to this tribunal. (*O'Neill* v. *Thomas Day Co.*, 152 Cal. 357 [92 P. 856, 14 Ann.Cas. 970].)

We have no doubt as to the husband's conduct being contumacious and wilful and that the appeal should be dismissed.

The appeal is dismissed.

White, P. J., and Drapeau, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.