2004 UT 64

**HENTSCH HENCHOZ & CIE,**
Plaintiff and Appellee,

v.

Philippe D. David GUBBAY; Capital Suisse, S.A.; Capital Suisse Securities, Inc.; Capital Suisse, Inc.; Zooley Services Limited; Zooley of Utah, Inc.; Fernland Limited; Douglas P. Hoyt; and John Does 1–10, Defendants and Appellants.

No. 20020683.

Supreme Court of Utah.

Aug. 6, 2004.

Neil A. Kaplan, Perrin R. Love, Walter A. Romney, Jr., Salt Lake City, for plaintiff.

Brent O. Hatch, Mark H. Richards, Salt Lake City, for defendants.

DURRANT, Justice:

¶1 Appellants contest the district court's denial of their motion to dismiss, arguing that venue is not proper in Utah due to a forum selection clause that provides for all actions to be brought in the British Virgin Islands. In light of appellants' wilful defiance of the district court's orders below, we refuse to consider the merits of the appeal at this time. Instead, we will stay the appeal in order to allow appellants time in which to comply with our instructions as outlined in this opinion. If appellants fail to comply, the appeal will be dismissed.

## BACKGROUND

¶2 The events giving rise to this litigation began in late 2000 when appellee Hentsch Henchoz & Cie ("HH & C"), a Swiss banking institution with offices around the world, was approached about a purported investment opportunity. HH & C was contacted by Philippe D. David Gubbay ("Gubbay"), the "Managing Director, CEO and President" of the "Capital Suisse Group of Companies," an organization that allegedly operated a highly successful "Mutual Fund for the Professional Investor."

¶3 The Capital Suisse Group of Companies, purportedly "a worldwide financial services corporation," included the following entities: Capital Suisse, S.A. ("the Fund"), which was incorporated in the British Virgin Islands and had offices in Marbella, Spain; Capital Suisse, Inc., a Utah corporation, which had its principal place of business in Salt Lake City and was the purported administrator and registrar of the Fund; Capital Suisse Securities, Inc., the principal custodian of the Fund with its principal place of business in San Rafael, California; Zooley Services Ltd., a West Indies corporation and professed investment adviser for the Fund; Zooley of Utah, Inc., a Utah corporation that allegedly provided financial services for Zooley Services; and Fernland Ltd., a West Indies corporation and, ostensibly, the sole director of the Fund. Gubbay corresponded on behalf of the Fund as a director of Fernland. (Gubbay and the Capital Suisse Group of Companies will be collectively referred to herein as "Capital Suisse.") Capital Suisse, Inc., and Zooley of Utah, Inc. maintained bank accounts at Wells Fargo Bank and Zions First National Bank in Salt Lake City, Utah.

¶4 In November of 2000, Gubbay provided HH & C with a confidential prospectus along with other materials that portrayed the Fund as being very successful and highly profitable. Relying on these and other representations, HH & C wired a total of nearly $25 million to Capital Suisse. Each of HH & C's seven wire transfers was accompanied by a "Subscription Agreement" that purported to set forth the number of shares purchased by HH & C. In addition, each Subscription Agreement contained a forum selection clause, providing that any legal proceedings against the Fund would be brought only in the British Virgin Islands.

¶5 Throughout the first quarter of 2001, the Capital Suisse website represented that the Fund was steadily gaining in value. However, after a routine internal review, HH & C became suspicious. Beginning in April 2001, HH & C began a series of attempts to redeem its shares. In the course of these unsuccessful attempts, HH & C discovered that Gubbay was a convicted embezzler and had been sentenced to a term of imprisonment and to deportation from Switzerland for seven years. HH & C also learned of, and

subsequently participated in, an ongoing criminal proceeding against Capital Suisse brought by another defrauded investor in Marbella, Spain. In defending against HH & C's claims before the Spanish court, Capital Suisse asserted that jurisdiction was not proper in Spain because HH & C did not have commercial relations with Capital Suisse in Spain, but only with Capital Suisse, Inc., located in Salt Lake City, Utah. At the conclusion of the Spanish proceeding, the Spanish Criminal Court issued an order freezing the Capital Suisse accounts at Wells Fargo Bank and Zions First National Bank in Salt Lake City, Utah (the "Spanish Order").

¶6 On June 21, 2001, HH & C filed a petition in Utah's Third District Court to enforce the Spanish Order. The district court scheduled an evidentiary hearing, and HH & C began serving subpoenas on the banks. Capital Suisse moved to quash the subpoenas or, alternatively, for a protective order preventing disclosure to third parties of any information gained from the bank accounts. Capital Suisse also filed a motion in limine, seeking to exclude any evidence relating to the bank records at the scheduled evidentiary hearing. On July 27, 2001, in its order on the motion to quash, the district court determined that HH & C was entitled to review the bank account balances for the dates of June 26th and July 25th pending the evidentiary hearing. Upon reviewing the account balances pursuant to the district court's order, HH & C learned that the accounts had been severely depleted.[1]

¶7 In the face of the dissipation of the bank accounts, and Capital Suisse's refusal to comply with HH & C's document requests, HH & C filed a verified complaint in the district court on August 2, 2001, asserting claims for fraud, civil conspiracy, breach of fiduciary duty, breach of contract, and conversion.[2] At that time, HH & C also filed a motion seeking a temporary restraining order and prejudgment writ of attachment of the bank accounts, in addition to a motion for expedited discovery with interrogatories and document requests to Capital Suisse and subpoenas to Zions and Wells Fargo. At a hearing on the motions, the district court questioned counsel for Capital Suisse as to the marked depletion in the bank accounts. Finding counsel's answers unsatisfactory, the court ordered counsel to be prepared the following week to disclose what had happened to the funds.[3] The court then granted HH & C's motions and entered a temporary restraining order freezing the Zions and Wells Fargo accounts.

¶8 On August 15, 2001, Capital Suisse requested a stay pending interlocutory appeal of the order granting expedited discovery.[4] Capital Suisse also filed a motion to dismiss based on lack of jurisdiction and improper venue due, in part, to the existence of the forum selection clause contained in the Subscription Agreements. In a minute entry dated October 11, 2001, the district court denied Capital Suisse's motion to dismiss. The court determined that, since the forum selection clause was unfair and the entire agreement was pervaded by fraud, the forum selection clause could be disregarded. It is this ruling that is the subject of this appeal.

¶9 The district court denied Capital Suisse's subsequent motion to stay the litigation pending interlocutory appeal of the denial of the motion to dismiss[5] and ordered Capital Suisse to comply with HH & C's outstanding discovery requests, which it noted had been outstanding for "some time." In response, Capital Suisse invoked the Fifth Amendment privilege against self-incrimination and otherwise refused to answer. Capi-

---

1. For instance, the Zions account had gone from a balance of $2,207,006.94 on June 26th to a balance of $804,468.31 on July 25th.

2. This action was later consolidated with the original petition to enforce the Spanish Order.

3. Although counsel agreed to do so, it does not appear that Capital Suisse ever complied with this request.

4. Specifically, Capital Suisse sought to stay any discovery of the bank accounts prior to "dispositive motions to dismiss being heard in [the] matter." We denied Capital Suisse's petition for interlocutory appeal on this matter on October 2, 2001.

5. This court denied interlocutory review by an order dated January 3, 2002.

tal Suisse's privilege claim was also denied by the district court, and the court again ordered Capital Suisse to answer the interrogatories and ordered all of the Capital Suisse defendants to answer the complaint. Capital Suisse filed an answer to the verified complaint on February 28, 2002.

¶ 10 At some point during the course of this litigation, in defiance of the district court's orders requiring Capital Suisse to comply with HH & C's discovery requests, Capital Suisse shipped all of its documents, records, and computer hard drives from Utah to Spain. Upon discovering that the documents and other items were no longer in Utah, the district court ordered their return. Soon thereafter on April 1, 2002, Capital Suisse filed a notice of withdrawal of answer, stating that it "refuse[d] to acknowledge [the] litigation any further" because, pursuant to the forum selection clause in the parties' agreement, jurisdiction was only proper in the British Virgin Islands. Capital Suisse's counsel also filed a motion to withdraw, indicating that Capital Suisse "do[es] not recognize the jurisdiction of the United States over the dispute." Counsel also stated that "as officers of the [c]ourt" they had been placed in a "conflict of interest situation" in light of the outstanding orders of the district court and Capital Suisse's "refus[al] to comply or otherwise participate any further in th[e] action."

¶ 11 HH & C then moved for summary judgment on three of its claims, which was unopposed by Capital Suisse. The district court granted the motion, concluding that Capital Suisse had defrauded HH & C "by acting in concert to create the appearance of a legitimate investment opportunity" that was "nothing more than a ruse to defraud innocent investors." The court entered judgment against Capital Suisse in the amount of $24,730,000 plus interest. Capital Suisse filed this appeal on August 15, 2002, contesting only the district court's denial of its motion to dismiss based on the forum selection clause. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).

## ANALYSIS

¶ 12 In its argument on appeal, HH & C urges this court to dismiss Capital Suisse's appeal without considering the merits because Capital Suisse has "repeatedly and willfully disobeyed [the district court's] orders ..., destroyed evidence, and refused to recognize the jurisdiction of the Utah courts." To date, this court has not addressed whether it may dismiss a civil appeal when the appellant disobeys the orders of the district court in the same action. The Utah Court of Appeals, however, has discussed its authority to dismiss appeals from contemptuous appellants on several occasions. In *D'Aston v. D'Aston,* 790 P.2d 590 (Utah Ct. App.1990), the first Utah case to address the issue, the appellant challenged a divorce decree entered by the trial court. *Id.* at 591. The court of appeals determined that it could dismiss the appeal because the appellant had failed to pay the amount due her former husband, had failed to post an ordered supersedeas bond, and had been adjudged in contempt by the trial court after "purposefully hiding herself from the jurisdiction of the [c]ourt and from service." *Id.* at 592–93.

¶ 13 In examining the procedures for dismissal followed by other jurisdictions, the court of appeals noted that there are at least three ways that an appellate court can deal with a contumacious party: (1) the court can dismiss the appeal without allowing the party an opportunity to bring itself into compliance with the trial court's order; (2) the court can allow the party a fixed time to comply with the trial court's order before dismissing the appeal; or (3) the court may, in its discretion, fashion a remedy that is appropriate to the facts and circumstances of the particular case. *Id.* at 593–94 (listing cases); *see also Von Hake v. Thomas,* 881 P.2d 895, 897–98 (Utah Ct.App.1994) (*"Von Hake II"*) (discussing *D'Aston* ). In deciding to allow the appellant in *D'Aston* thirty days to "bring herself within the process of the trial court" before her appeal would be dismissed, the court of appeals emphasized that its approach did not deny the appellant her constitutional right to appeal under article VIII, section 5 of the Utah Constitution. *Id.* at 594–95. Rather, the court merely "insist[ed] [that] she ... submit herself to the jurisdiction of the trial court and satisfy that court's

concerns before she [would be allowed to] exercise that right." *Id.*

¶ 14 Similarly, in *Von Hake v. Thomas*, 858 P.2d 193 (Utah Ct.App.1993) ("*Von Hake I* "), the court of appeals dismissed the appeal of a litigant who had been adjudged in contempt by the trial court for failure to comply with discovery orders and the use of "improper and dilatory tactics to frustrate [trial court] orders and to avoid appearing in court." *Id.* at 193–94. The court determined that because the appellant was currently serving a five-year term of imprisonment in California for tax fraud, "a provisional dismissal, conditioned upon [his] failure to physically present himself to the trial court within thirty days, would be an exercise in futility." *Id.* at 197. Therefore, the court "dispense[d] with the formality of a thirty-day grace period" and dismissed the appeal outright. *Id.*

¶ 15 On remand from this court, the court of appeals revisited the necessity of a grace period and concluded that *D'Aston* did not require a mandatory grace period before dismissal, but rather that "*D'Aston* affirm[ed] the court's discretionary authority to dismiss the appeals of contumacious litigants under terms which are fair and just given the circumstances of a particular case." *Von Hake II*, 881 P.2d at 897–98. Therefore, the court again held that the appeal should be dismissed outright, but noted that the dismissal was "without prejudice, subject to reinstatement on reasonable terms and conditions" specified by the court. *Id.* at 898; *see also Cummings v. Cummings*, 1999 UT App 356, ¶ 11, 993 P.2d 248 (holding that because appellant had been adjudged in contempt and his defiance of court orders had led to the dissipation of the marital assets, the court could, in its discretion, dismiss the appeal and "condition reinstatement of th[e] appeal upon appellant's submission to th[e] court of proof that he ha[d] satisfied the judgments held by appellee").

¶ 16 In light of these cases and myriad authorities from other jurisdictions,[6] we conclude that this court, in its discretion, may dismiss the appeals of appellants who have wilfully disobeyed an order of a lower court in the same action. We agree with the approach adopted by the court of appeals that allows the reviewing appellate court to exercise its discretionary authority by fashioning a remedy that is fair and just under the circumstances, taking into account the facts of the particular case. Such authority is indispensable since it would "violate[ ] the principles of justice to allow a party who flaunts the orders of the courts to seek judicial assistance" on appeal. *D'Aston*, 790 P.2d at 593 (citing *Stewart v. Stewart*, 91 Ariz. 356, 372 P.2d 697, 700 (1962); *Rude v. Rude*, 153 Cal.App.2d 243, 314 P.2d 226, 230 (1957); *Greenwood v. Greenwood*, 191 Conn. 309, 464 A.2d 771, 773 (1983); *Strange v. Strange*, 464 S.W.2d 216, 219 (Tex.Civ.App.1970) (per curiam)).

¶ 17 Additionally, although in the court of appeals' cases discussed above the appellants had been formally cited for contempt, we conclude that dismissal of appeals from disobedient parties does not require a formal finding of contempt. In so concluding, we join with those jurisdictions that maintain that "[t]he principle permitting [a] court to stay or dismiss an appeal does not require a formal judgment of civil contempt. It is based upon fundamental equity and is not to be frustrated by technicalities, such as the absence of a formal citation and judgment of contempt." *Alioto Fish Co., Ltd. v. Alioto*, 27 Cal.App.4th 1669, 34 Cal.Rptr.2d 244, 251 (1994) (quotations omitted) (finding that appellant's "wilful disobedience [and] obstructive tactics" were sufficient to warrant dismissal of the appeal (quotations omitted)); *see also Stewart*, 372 P.2d at 699–700 (noting that a number of jurisdictions allow appellate discretion to dismiss for violations of trial court orders "whether or not the disobedient appellants have been formally adjudicated in

---

**6.** *See, e.g., Stewart v. Stewart*, 91 Ariz. 356, 372 P.2d 697 (1962); *Alioto Fish Co., Ltd. v. Alioto*, 27 Cal.App.4th 1669, 34 Cal.Rptr.2d 244 (1994); *Tobin v. Casaus*, 128 Cal.App.2d 588, 275 P.2d 792 (1954); *Schmidt v. Schmidt*, 610 A.2d 1374 (Del.1992); *Keidaish v. Smith*, 400 So.2d 90 (Fla. Dist.Ct.App.1981); *Prevenas v. Prevenas*, 193 Neb. 399, 227 N.W.2d 29 (1975); *DeMauro v. DeMauro*, 147 N.H. 478, 794 A.2d 112 (2002); *Hopp v. James*, 470 S.W.2d 716 (Tex.Civ.App. 1971).

contempt of court"); *Keidaish v. Smith,* 400 So.2d 90, 91 (Fla.Dist.Ct.App.1981) (dismissing appeal even where there was no formal finding of contempt because appellant had violated temporary injunction by transferring valuable property and money to various parties and had fled the jurisdiction).

¶ 18 In the present case, Capital Suisse's defiance of district court orders is clearly sufficient to warrant dismissal of the appeal. Though not formally adjudged in contempt, Capital Suisse's wilful disobedience would certainly have been adequate to support an order of contempt had Capital Suisse not absented itself from the litigation. Capital Suisse repeatedly refused to comply with discovery requests from HH & C and went to extreme lengths to prevent access to the Zions and Wells Fargo bank accounts. Upon being ordered by the district court to comply with discovery, Capital Suisse shipped all of its documents, records, and computer hard drives from Utah to Spain. On the heels of this insubordination, upon being ordered to return the awol documents and other evidence, Capital Suisse abruptly withdrew from the litigation, claiming that the district court had no jurisdiction over it.

■ ¶ 19 Capital Suisse argues that it did not wilfully disobey court orders, but that it "simply declined to participate substantively in the proceedings" after the district court denied its motion to dismiss for lack of venue, at which point it was "convinced that the [district] court had abused its discretion by wrongly concluding that venue was proper in Utah." We emphasize, however, that "[t]he processes of the appellate court are [only] available to one who recognizes his responsibility to obey court orders while they remain in effect," and "a litigant is not free to determine to what extent he will comply with the law." *Schmidt v. Schmidt,* 610 A.2d 1374, 1377 (Del.1992).

■ ¶ 20 Further, we observe that Capital Suisse does not contend on appeal that the district court lacked jurisdiction or otherwise lacked authority to enter orders in this case. Rather, Capital Suisse argues only that venue is improper in Utah due to the contractual forum selection clause. Early case law from this court confirms that when a court "has legally acquired jurisdiction of subject-matter and of the parties, [its] jurisdiction ... is not affected every time [it] thereafter misconstrues, misconceives, or misapplies a statute not involving subject-matter, jurisdiction, or parties, but mere procedure." *State v. Morgan,* 44 Utah 224, 230, 140 P. 218, 221 (1914). Error with regard to a determination of proper venue is "simply [an] error[ ] of law" and does not oust the jurisdiction of a court that has properly acquired jurisdiction over the subject matter and the parties to an action. *Morgan,* 44 Utah at 229, 140 P. at 220. While a court's judgment in this regard may be voidable, the error does not go "to the power of the court itself," and "its judgment is not void." *Id.* (internal quotations omitted); *see also Floor v. Mitchell,* 86 Utah 203, 212, 41 P.2d 281, 284–85 (1935) ("The court had jurisdiction of subject-matter. It also by process served had jurisdiction of the person of the defendants. The action here, thus, was not a question of jurisdiction either of subject-matter or of person. It was one merely of venue.").

¶ 21 It is clear that the district court in this case had both subject-matter jurisdiction over the case and personal jurisdiction over the defendants. If the presence of Capital Suisse subsidiaries and bank accounts in Utah alone were not enough to grant personal jurisdiction, then certainly Capital Suisse's prolonged participation in the litigation prior to withdrawal would have been sufficient. Therefore, even if we were to assume that the district court's determination with respect to venue was in error, the district court nevertheless had the authority to enter valid and enforceable orders in this case, and Capital Suisse was obliged to comply.

¶ 22 Furthermore, while a party may permissibly withdraw from litigation and allow a default or summary judgment to be entered against it, a party may not wilfully engage in affirmative acts that frustrate district court orders. Contrary to Capital Suisse's assertions, Capital Suisse did not "simply decline[ ] to participate substantively in the proceedings" in this case. Rather, Capital Suisse defied district court orders by shipping its documents out of state, thwarting

HH & C's efforts to trace its assets, and deliberately frustrating the litigation. Moreover, the orders of the district court were both received and violated by Capital Suisse while Capital Suisse was still meaningfully participating in the litigation.

¶ 23 Capital Suisse also argues that it has a "substantive right to appeal" the district court's denial of its motion to dismiss for improper venue and that it has " 'a legal right to insist that the action proceed in the proper venue.' " *See State v. Sosa,* 598 P.2d 342, 344 (Utah 1979) (further quotations omitted). We agree that "[t]he right to appeal is a valuable and constitutional right and ought not to be denied except where it is clear the right has been lost or abandoned." *Adamson v. Brockbank,* 112 Utah 52, 60, 185 P.2d 264, 268 (1947); *see also* Utah Const. art. VIII, § 5. However, the right to appeal is not absolute and the right may be forfeited, or a valid appeal may be dismissed, due to the acts or omissions of the appellant, including, for example, infractions of the rules of appellate procedure. *See, e.g.,* Utah R.App. P. 3(a) ("Failure of an appellant to take any step ... is ground ... for such action as the appellate court deems appropriate, which may include dismissal of the appeal ...."); *State v. Houskeeper,* 2002 UT 118, ¶ 23, 62 P.3d 444 ("Failure to timely file an appeal pursuant to rule 4 constitutes a waiver of the right to appeal. Additionally, failure to timely file deprives an appellate court of jurisdiction over the appeal."). In addition, the United States Supreme Court has held that dismissing the appeal of an appellant who wilfully defies court orders does not violate due process, but rather, may be a "reasonable means of safeguarding the collectibility of [a] judgment." *Nat'l Union of Marine Cooks & Stewards v. Arnold,* 348 U.S. 37, 41, 43–44, 75 S.Ct. 92, 99 L.Ed. 46 (1954) ("While a statutory review is important and must be exercised without discrimination, such a review is not a requirement of due process.").

¶ 24 As previously explained, in exercising our authority to dismiss the appeals of contumacious appellants, we have discretion to fashion a remedy that is fair and just under the facts and circumstances of the particular case. Accordingly, we hereby stay this appeal to allow Capital Suisse time to comply with the following conditions, which must be fulfilled before we will entertain the appeal on the merits. First, Capital Suisse must, within thirty days from the date of this decision, bring itself into compliance with the orders of the district court in this matter, including those orders requiring Capital Suisse to comply with discovery and to return all of the requested documents and evidence to Utah. Second, inasmuch as we are concerned that any continued delay will lead to the further dissipation of Capital Suisse's assets, we also require Capital Suisse to post bond with the district court in the amount of any unsatisfied portion of the judgment that has been entered against it.

¶ 25 We therefore remand this matter to the district court to make the following determinations: (1) whether Capital Suisse has adequately complied with the orders of the district court within thirty days from the issuance of this decision; (2) the amount of the unsatisfied portion of the district court judgment; and (3) whether Capital Suisse has posted an adequate bond in that amount.

¶ 26 In light of the various determinations that must be made by the district court on remand, we will allow Capital Suisse ninety days from the date of this decision in which to comply with the conditions specified above. Accordingly, Capital Suisse must, within ninety days, provide this court with notice that it has complied with these conditions, including the relevant orders of the district court regarding whether Capital Suisse has fulfilled the court's discovery orders within the allotted thirty-day time period and posted bond in the appropriate amount. If, at the end of ninety days, Capital Suisse has failed to comply with each of these requirements, or continues to resort to evasive or dilatory tactics, the appeal will be dismissed without further notice or argument.

## CONCLUSION

¶ 27 Due to appellants' wilful disobedience and defiance of district court orders, we refuse to reach the merits of this appeal. Instead, we stay the appeal and remand to the district court to make the determinations

described herein. Appellants' failure to comply with any of the conditions outlined in this opinion will result in dismissal of the appeal.

¶ 28 Chief Justice DURHAM, Associate Chief Justice WILKINS, Judge ORME, and Judge BEACHAM concur in Justice DURRANT's opinion.

¶ 29 Having disqualified themselves, Justice PARRISH and Justice NEHRING do not participate herein; Court of Appeals Judge GREGORY K. ORME and District Judge RAND G. BEACHAM sat.