**STATE of Utah, Plaintiff and Respondent,**

v.

**Wesley Allen TUTTLE, Defendant and Appellant.**

**No. 20068.**

Supreme Court of Utah.

Oct. 18, 1985.

---

7. *Christensen, supra* note 2, at 1301.

8. *Id.*

Kenneth R. Brown, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Wesley Allen Tuttle was convicted of first degree murder by a jury in Summit County, Utah. After a penalty hearing before the trial judge, he was sentenced to life imprisonment on May 21, 1984. Tuttle filed a notice of appeal on July 12, 1984. He escaped from the Utah State Prison on August 21, 1984, and was returned to custody on February 7, 1985. While he was free, this Court dismissed his appeal. On August 15, 1985, following Tuttle's return to prison, we reinstated the appeal by minute order. This opinion explains the reasons for that action.

In dismissing Tuttle's appeal, the Court acted under the settled rule of *Hardy v. Morris*, Utah, 636 P.2d 473 (1981). *Hardy* reasoned that one who escapes places himself beyond the reach of the judicial system and any ruling cannot be enforced against him; therefore, he should not be allowed to pursue an appeal while out of custody. *Id.* at 474. Once Tuttle was returned to custody, this Court's power again extended to Tuttle and the rationale of *Hardy* no longer applies. The question is whether other grounds justify a refusal to reinstate the appeal.

The State urges that under our *per curiam* opinion in *State v. Brady*, Utah, 655 P.2d 1132 (1982), an appeal dismissed because of the appellant's escape is not entitled to reinstatement because "[b]y escaping and remaining at large until he was involuntarily returned to custody, appellant abandoned his appeal ...." *Id.* at 1133. Upon reflection, we find the abandonment reasoning of *Brady* unpersuasive and we find no other convincing reason for routinely refusing to reinstate appeals of convicts who have been returned to custody. We therefore overrule *Brady* to the extent that it is inconsistent with this opinion.

The Utah Constitution provides that a defendant in a criminal prosecution shall have a "right to appeal in all cases." Utah Const. art. I, § 12. This shows that the drafters of our constitution considered the right of appeal essential to a fair criminal proceeding. Rights guaranteed by our state constitution are to be carefully protected by the courts. We will not permit them to be lightly forfeited. The stated premise of *Brady*—that an escape is an intentional abandonment of an appeal—is founded upon a questionable assumption, *i.e.*, that one who escapes has actually made a decision to abandon his appeal. A far more reasonable assumption is that the escapee has not even considered how his escape will affect his appeal rights. *See* Note, 54 N.C.L.Rev. 224, 234 (1976).

If an escape cannot honestly be said to be a knowing waiver of appeal rights, then we must look deeper for some justification for the result reached by *Brady* and sought by the State here. Analysis suggests that a rule automatically denying reinstatement of an escapee's appeal upon a return to custody really amounts to imposi-

tion by this Court of a punishment for escape. *See* Note, *supra,* at 234–37. Neither law nor logic justifies our undertaking to impose such a sanction. First, the legislature has already proscribed escape and set penalties for that offense. U.C.A., 1953, § 76–8–309 (1978 ed.). Nothing in the law warrants this Court's imposing an additional punishment for escape. *See Mascarenas v. State,* 94 N.M. 506, 507, 612 P.2d 1317, 1318 (1980).

Second, denying reinstatement of an escapee's appeal would impose a punishment related not to the offense—the escape—but to the crime of which the escapee was originally convicted. For example, if one escapee had been erroneously convicted of first degree murder and sentenced to life imprisonment and another had been wrongfully convicted of theft and sentenced to one year, a refusal to reinstate either appeal would have the effect of imposing dramatically different punishments for the same offense—escape.

Finally, refusing to reinstate the appeals of escapees necessarily operates to punish only those with meritorious grounds for appeal, for those whose appeals lack merit will obtain no relief under any circumstances. The foregoing suggests that refusing to reinstate appeals of those who escape and are returned to custody raises serious due process and equal protection questions under the Utah Constitution. *See Estelle*

*v. Dorrough,* 420 U.S. 534, 544–45, 95 S.Ct. 1173, 1179, 43 L.Ed.2d 377 (1975) (Stewart, J., dissenting); Note, *supra,* at 234.[1]

 In light of the fundamental nature of the right to appellate review of a criminal conviction and the lack of any sound practical or policy justification for refusing to hear the appeals of escapees after they are returned to custody, we conclude that a criminal appeal dismissed after escape may be reinstated unless the State can show that it has been prejudiced by the defendant's absence and the consequent lapse of time. No such showing was made here; therefore, the appeal is reinstated.[2]

STEWART and DURHAM, JJ., concur.

HALL, Chief Justice (dissenting):

I do not share the reasoning of the Court in overturning *State v. Brady.*[1]

While the Utah Constitution affords the right of appeal in all cases,[2] that right may be effectively waived or abandoned. One who escapes not only abandons his appeal, he also abandons and forsakes the judicial system as a whole. He no longer relies upon it in any respect, and to dismiss his appeal for that reason is neither to be viewed as a forfeiture of a constitutional right nor as a penalty. This is particularly demonstrated by the facts of the instant case wherein Tuttle did not voluntarily return to custody with any excuse or justifi-

1. We recognize that a majority of the United States Supreme Court has found that such dismissals and refusals to reinstate do not deny federal rights to due process or equal protection. *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975). However, that result appears based on the premise that legislatures can freely restrict appeal rights because "there is no federal constitutional right to state appellate review of state criminal convictions." Id. at 536, 95 S.Ct. at 1175. The analytical approach presumably would be different under our state analogue to the equal protection clause, article I, section 24, because the Declaration of Rights in the Utah Constitution, unlike the federal Bill of Rights, does confer a right to appeal on a criminal defendant. *Cf. Malan v. Lewis,* Utah, 693 P.2d 661, 670–72 (1984) (reviewing analysis of state equal protection claims). Similarly, because we find no basis for punishing escapees by denying the right to ap-

peal, a due process analysis under the Utah Constitution likely would also yield a different conclusion than one conducted under the federal constitution.

2. Tuttle argues that because all capital convictions are subject to "automatic review" by this Court under Utah's death penalty statute, U.C.A., 1953, § 76–3–206(2) (1978 ed.), he is entitled to reinstatement of his appeal even if other escapees convicted of lesser offenses are not. Tuttle misreads section 76–3–206(2). It requires automatic review only in those cases where a sentence of death is imposed, not in cases where the defendant is convicted of a capital felony but receives a life sentence.

1. Utah, 655 P.2d 1132 (1982).

2. Art. I, § 12.

cation for his behavior, but in fact remained at large for a considerable length of time. Had he not been tracked down, arrested, and involuntarily returned to custody, he no doubt would have remained at large. Only because of his reincarceration does he again seek relief from the system.

I would not disturb the prior dismissal of the appeal.

HOWE, J., concurs in the dissenting opinion of HALL, C.J.