Richard W. VON HAKE, Trustee of the
Von Hake 1987 Trust, Plaintiff and
Appellee,

v.

Harry Edward THOMAS, Defendant
and Appellant.

No. 920643–CA.

Court of Appeals of Utah.

Aug. 10, 1993.

Shawn D. Turner, Salt Lake City, for defendant and appellant.

H. Ralph Klemm, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GARFF and ORME, JJ.

ORME, Judge:

Defendant, Harry Edward Thomas, appeals the summary judgment entered against him in plaintiff's action to renew a judgment. Due to defendant's long-standing status as a contemnor of the trial court, we refuse to consider the merits of his appeal and instead dismiss it.

## FACTS

As this case has a long and arduous history, we only discuss facts pertinent to our disposition, and not those of the underlying dispute or the myriad of arguments Thomas raises in the instant appeal.

In an earlier round of this litigation, appellee's father and predecessor in interest, Richard A. Von Hake, obtained a substantial judgment for fraud against Thomas. The Utah Supreme Court affirmed that judgment in *Von Hake v. Thomas,* 705 P.2d 766 (Utah 1985) (*Von Hake I*). Eighteen months later, because Thomas had failed to make payments on the judgment,

Von Hake commenced supplemental proceedings to discover the whereabouts and extent of Thomas's assets.

During the course of protracted supplemental proceedings, the trial court found that Thomas had not complied with its order for production and had used improper and dilatory tactics to frustrate its orders and to avoid appearing in court. Accordingly, the court found Thomas in contempt, sentenced him to thirty days in jail, and ordered the issuance of an arrest warrant.[1]

The court entered a formal order of commitment stating that Thomas was guilty of contempt for failing to produce various documents and for failing to appear before the court as ordered. The Utah Supreme Court stayed execution of the sentence pending appeal.

On appeal, the Court, *inter alia*, affirmed Thomas's criminal contempt conviction. *Von Hake v. Thomas*, 759 P.2d 1162, 1173 (Utah 1988) (*Von Hake II*). The Court released the stay of execution and remanded the matter to the trial court for a single purpose: "execution of the thirty-day sentence." *Id.*

Thomas is now appealing the summary judgment entered against him in a proceeding to renew the very judgment affirmed in *Von Hake I* and out of which the contempt determination arose.[2] Nonetheless, to this very day, Thomas has not served the thirty-day contempt sentence upheld in *Von Hake II.* Upon learning of this state of affairs in the course of reviewing the briefs, we requested that both parties file supplemental memoranda addressed to the effects of Thomas's outstanding contempt on his present appeal in light of our decision in *D'Aston v. D'Aston*, 790 P.2d 590 (Utah App.1990). In his memorandum, Thomas

disclosed he was incarcerated on April 12, 1993, in the Federal Penitentiary in Boron, California, where he is serving a five-year sentence for tax fraud.

## D'ASTON

*D'Aston* presented this court—coincidentally, this very panel—with its first opportunity to determine whether Utah appellate courts "may dismiss a civil appeal when the appellant is in contempt of a trial court order *in the same action.*" *D'Aston v. D'Aston*, 790 P.2d 590, 593 (Utah App.1990) (emphasis added). In *D'Aston*, the trial court held the appellant in contempt of court because she was "purposely hiding herself from the jurisdiction of the Court and from service." *Id.* at 592. Accordingly, the trial court entered a formal order of commitment and issued a bench warrant for appellant's arrest. Subsequently, appellant filed an appeal from the divorce decree entered by the trial court. We held that the appeal would be dismissed in thirty days if within that time appellant did not bring herself within the process of the trial court. *Id.* at 595. In so doing, we stressed that appellant was not being denied her right to an appeal under Article VIII, section 5 of the Utah Constitution, but instead was merely being required to submit herself to the lawful process of the trial court and to satisfy that court's concerns as a prerequisite to exercising her right to an appeal. *Id.* at 594.

## CONTEMPT

 In his memorandum, Thomas urges this court not to dismiss his appeal on two grounds, both of which focus on the alleged inapplicability of *D'Aston* to the instant matter.[3] First, Thomas asserts

---

1. A detailed description of the events leading to the trial court's decision holding Thomas in contempt of court can be found in *Von Hake v. Thomas*, 759 P.2d 1162, 1164–66 (Utah 1988).

2. We note that the appellee in the instant action is not the original plaintiff. Richard A. Von Hake was the original plaintiff in *Von Hake I* but upon his death, appellee became trustee of the Von Hake 1987 Trust and is suing to renew the original judgment in that capacity.

3. An additional concern surfaced at oral argument, namely that our record does not establish that Thomas ever actually received notice of the Utah Supreme Court's decision affirming the criminal contempt determination. Any concern regarding Thomas's awareness of the Court's decision and consequently his need to submit himself to the trial court is allayed by our reasoning in *D'Aston v. D'Aston*, 790 P.2d 590 (Utah App.1990). In *D'Aston*, we stated that where the party has initially been served in a case and is

that this case is different from *D'Aston* because unlike *D'Aston*, in which the contempt occurred in the very action from which the appeal was taken, albeit for failure to comply with post-judgment directives of the court, the appeal here is arguably in an action different from the one in which the contempt occurred, namely a subsequent action to renew the judgment entered in the case out of which the contempt arose. Second, Thomas claims that his circumstances are unlike those present in *D'Aston* because in *D'Aston* there was no discernible obstacle preventing the appellant from complying with the trial court's order, whereas, in the present case, Thomas's incarceration makes it physically impossible for him to submit himself to the trial court within thirty days. Thus, Thomas concludes that because a dismissal conditioned on submitting himself to the district court would necessarily be fruitless, we cannot dismiss his appeal.

We disagree that these arguable distinctions take the instant matter out of the compass of the *D'Aston* rule. Thomas convinces us that conditioning dismissal on his appearance within thirty days would be fruitless; he does not convince us that he should be spared the dismissal of his appeal.

### A. Action to Renew Judgment

Thomas first argues that an action to renew a judgment is an action separate from the action out of which the judgment arose.

represented by counsel, service on the party's attorney of an order to show cause why the party should not be held in contempt is sufficient. 790 P.2d at 592. Moreover, we recognized that even if an attorney is unaware of the whereabouts of his or her client and is only authorized to represent the client on appeal, service on the attorney alone is adequate to sustain a contempt order entered against the client. *D'Aston*, 790 P.2d at 592–93. We believe this reasoning reflects the simple proposition that an attorney is the agent of the client and knowledge of any material fact possessed by the attorney is imputed to the client. *Runge v. Fox*, 796 P.2d 1143, 1147 (N.M.App.1990). *See Alexander v. Russo*, 571 P.2d 350, 358 (Kan.App. 1977); *Lange v. Hickman*, 92 Nev. 41, 544 P.2d 1208, 1209 (1976); *Mahoney v. Linder*, 14 Or. App. 656, 514 P.2d 901, 904 (1973); *Haller v.*

In *D'Aston*, this court's decision dealt with the limited situation in which the appellant was in contempt of a trial court's order issued in the same action. 790 P.2d at 593. Indeed, some jurisdictions limit the authority of courts to dismiss a contemnor's appeal to just such circumstances. *See Bonn v. Bonn*, 12 Wash.App. 312, 529 P.2d 851, 854 (1974) (holding that a contemnor has access to the courts to present a new and independent matter).

However, the majority rule expands this doctrine somewhat and also allows dismissal of a contemnor's appeal if the contempt arose in a collateral proceeding. In *Steed v. Woods*, 475 S.W.2d 814 (Tex.Civ.App. 1972), for example, the court stated that it was

convinced that the better reasoning supports the majority rule that an appellate court, in the absence of a constitutional or statutory prohibition, is vested with the implied power to deny the assistance of its processes to an appellant who persists in contumaciously defying either the order attempted to be appealed from *or a collateral order emanating from the same cause of action.*

*Id.* at 816 (emphasis added). In *Woods*, the court held that where the appellant stood in contempt of a prior custody order entered in a divorce action, her appeal from a subsequent community property division award, arising out of the same divorce proceeding, would be dismissed. *Id.* at 817.

*Wallis*, 89 Wash.2d 539, 573 P.2d 1302, 1307 (1978) (en banc).

We see no reason why a different rule should apply to the present situation. As Thomas was represented by counsel on his appeal of the contempt order, and no claim has been raised that his counsel was unaware of the Court's decision or the need for Thomas to submit himself to the trial court (an untenable proposition since copies of Supreme Court decisions are routinely sent to the attorneys of record in the action and, in the unlikely event of misdelivery, counsel would have seen the published decision anyway in the course of reviewing the advance sheets), we hold that Thomas is properly chargeable with knowledge of the decision and consequently of his obligation to serve his outstanding sentence.

■ Thomas urges this court to consider a renewal proceeding a separate action because it is commenced by the filing of a new complaint and summons. *See* Utah R.Civ.P. 3(a). We refuse to do so. It is clear in the instant case that the renewal judgment appealed from arises, ultimately, from the same cause of action that culminated in the original judgment. Thus, we could consider the renewal action a collateral proceeding and dismiss Thomas's appeal under the *Woods* rationale. However, we believe the better line of reasoning, which is followed by Utah and the majority of American jurisdictions, treats a renewal action as simply a continuation of the original proceeding.

Under Utah law, "[a] renewal is not an attempt to enforce, collect, or expand the original judgment." *Barber v. Emporium Partnership*, 800 P.2d 795, 797 (Utah 1990) (holding that an action to renew a judgment against a debtor does not violate the automatic stay provisions of the Bankruptcy Code). Instead, in seeking to renew a judgment, a party is "only trying to maintain the status quo by preventing the judgment's lapse under the statute of limitations." *Id.* Accordingly, Utah law treats a renewal action, at least in other contexts, as merely a continuation of the original proceeding and not as a new and independent action.

The adherence of American jurisdictions to this position is unmistakable in cases dealing with questions of in personam jurisdiction. *See, e.g., Bank of Edwardsville v. Raffaelle*, 381 Ill. 486, 45 N.E.2d 651, 653 (1942) (action to renew a money judgment is not a new suit but a continuation of the old one); *Bahan v. Youngstown Sheet & Tube Co.*, 191 So.2d 668, 670 (La.App.1966) (proceeding to revive a money judgment entered against a nonresident judgment debtor is not a new action but is only a proceeding to continue the original action); *State v. Kirkwood*, 361 Mo. 1194, 239 S.W.2d 332, 334 (1951) (en banc) (action to revive a divorce is not a new action but is merely a continuation of and supplementary to the original proceeding); *Kronstadt v. Kronstadt*, 238 N.J.Super. 614, 570 A.2d 485, 487–88 (1990) (process to revive a judgment for support arrearages and partial property settlement is simply a continuation of the original action); *Berly v. Sias*, 152 Tex. 176, 255 S.W.2d 505, 508 (1953) (action to renew a money judgment is not an independent suit but merely a continuation of the original suit); *Duffy v. Hartsock*, 187 Va. 406, 46 S.E.2d 570, 574 (1948) (proceeding to revive a judgment lien against real estate is to be treated as a continuation of the original suit). Likewise, the connection between the original action and the renewal action in the instant case is simply too close to ignore merely because a new complaint is filed and a new civil number assigned to the renewal action.

It is immaterial whether we designate a renewal proceeding as a continuation of the original proceeding or as a collateral order. *See Woods*, 475 S.W.2d at 816. Either characterization yields the same result: the *D'Aston* rule is applicable.

### B. Present Inability to Discharge Contempt

■ Thomas's second assertion is that *D'Aston* is inapplicable because even if he now wanted to submit himself to the trial court, he cannot do so as a result of his incarceration, whereas in *D'Aston*, there was no impediment to compliance other than the appellant's own refusal to do so.[4]

■ Utah case law recognizes the general rule that "a party who is in contempt

---

4. In making this argument, Thomas chooses to overlook that for over five years there was no impediment to his bringing himself into compliance with the lawful process of this state's judiciary other than his own refusal to do so. His incarceration in California is an excellent reason for not appearing at the Kane County Jail, toilet kit in hand, to discharge his obligation. The argument borders on the disingenuous, however, for the simple reason that this excuse has been available to Thomas only since April 12, 1993. Notwithstanding his difficulties with the federal government, there was ample opportunity for Thomas, in the half decade preceding his imprisonment on federal charges, to make his peace with the Sixth District Court if he had any sincere desire to do so.

will not be heard by the court when he wishes to make a motion or [be] grant[ed] a favor." *Baker v. Baker*, 119 Utah 37, 224 P.2d 192, 194 (1950). *Accord Johnson v. Johnson*, 560 P.2d 1132, 1134 (Utah 1977). Nonetheless, Utah has chosen to follow a majority of jurisdictions in allowing the contemnor time to comply with the trial court's order before dismissing the appeal. *D'Aston v. D'Aston*, 790 P.2d 590, 593–95 (Utah App.1990) (30 days to comply) (citing *Stewart v. Stewart*, 91 Ariz. 356, 372 P.2d 697, 700 (1962) (en banc) (30 days to comply); *Tobin v. Casaus*, 128 Cal.App.2d 588, 275 P.2d 792, 795 (1954) (30 days to comply); *Greenwood v. Greenwood*, 191 Conn. 309, 464 A.2d 771, 774 (1983) (30 days to comply); *Pasin v. Pasin*, 517 So.2d 742, 742 (Fla.Dist.Ct.App.1987) (15 days to comply); *In re Marriage of Marks*, 96 Ill. App.3d 360, 51 Ill.Dec. 626, 629, 420 N.E.2d 1184, 1187 (1981) (30 days to comply); *Henderson v. Henderson*, 329 Mass. 257, 107 N.E.2d 773, 774 (1952) (30 days to comply); *Prevenas v. Prevenas*, 193 Neb. 399, 227 N.W.2d 29, 30 (1975) (20 days to comply); *Hemenway v. Hemenway*, 114 R.I. 718, 339 A.2d 247, 250 (1975) (30 days to comply); *Strange v. Strange*, 464 S.W.2d 216, 219 (Tex.Civ.App.1970) (per curiam) (10 days to comply); *Pike v. Pike*, 24 Wash.2d 735, 167 P.2d 401, 404 (1946) (10 days to comply)). A court's rationale in dismissing an appeal if the contempt persists beyond the grace period is that it would be a flagrant abuse of the principles of equity and the due administration of justice to allow a party who flaunts court orders to seek judicial aid. *D'Aston*, 790 P.2d at 593.

In *D'Aston*, we recognized that the appellant was not claiming that she was unable to comply with the trial court's order, *id.* at 594, as Thomas is claiming here. While it is generally true that an individual should not be penalized for circumstances beyond one's control, *see Stewart*, 372 P.2d at 700, this is not Thomas's situation. Although Thomas may have a valid excuse for not complying with the trial court's

order *since April 12, 1993*, while he has been incarcerated, Thomas has no excuse for his failure to submit himself during the entire five years preceding his out-of-state incarceration. All parties to this appeal agree that a provisional dismissal, conditioned upon Thomas's failure to physically present himself to the trial court within thirty days, would be an exercise in futility. From this common ground, the parties quickly diverge. Thomas argues that *D'Aston* cannot be applied and his appeal cannot be dismissed. Appellee urges that the futility of a thirty-day grace period dictates an outright dismissal.

Applying the sound rule of *D'Aston*, we agree with appellee and dispense with the formality of a thirty-day grace period because Thomas concedes he cannot possibly avail himself of it.

## SUA SPONTE DISMISSAL

■ Although neither party questioned the power of this court to dismiss Thomas's appeal sua sponte,[5] we pause to give a brief summary of the firm legal basis for our action. While Utah's appellate courts have not considered whether they may dismiss a civil appeal sua sponte when the appellant is in contempt of a trial court order, other jurisdictions have recognized that appellate courts are entitled to dismiss the appeals of contemnors sua sponte.

In *Greenwood v. Greenwood*, 191 Conn. 309, 464 A.2d 771 (1983), the Supreme Court of Connecticut held that it would dismiss plaintiff's appeal, sua sponte, if the plaintiff did not comply with the trial court's orders within thirty days. *Id.* 464 A.2d at 774. In so doing, the court noted the broad discretion vested in the courts when deciding whether contemptuous conduct warrants dismissal of an appeal. *Id.* 464 A.2d at 773. The court stated that "[a]lthough the defendant never made a motion to dismiss the appeal, this court is not limited in its disposition of a case to claims raised by the parties and has fre-

5. In *D'Aston*, appellee had affirmatively moved for dismissal in view of appellant's contempt.

790 P.2d at 591.

quently acted sua sponte upon grounds of which the parties were not previously apprised." *Id.* Moreover, the court noted the plaintiff was not prejudiced by its action because the conditional nature of the dismissal provided plaintiff with a reasonable opportunity to save her appeal by submitting herself to the trial court.[6] *Id.* 464 A.2d at 773–74. *See* 17 Am.Jur.2d, *Contempt* § 226 (1990) (appellate court, in the exercise of its inherent authority, may decline to entertain an appeal by a litigant who stands in contempt in the proceedings sought to be appealed). *See also Steed v. Woods,* 475 S.W.2d 814, 816–17 (Tex.Civ. App.1972) (appellate court may deny review to a contumacious appellant in the exercise of the appellate court's implied power to use its processes to induce compliance with a related order) (relying on *National Union of Marine Cooks and Stewards v. Arnold,* 348 U.S. 37, 75 S.Ct. 92, 99 L.Ed. 46 (1954)); *State v. Common Pleas Court,* 13 Ohio St.2d 133, 235 N.E.2d 232, 235 (1968) (within inherent powers of court to deny judicial assistance to litigant who refuses to comply with court orders).

The rationale behind allowing a court the discretion to dismiss a contemnor's appeal stems from the

> rash of modern instances where court orders are disobeyed with impunity and respect for the law and the courts [is] thereby weakened. It seems, therefore, that it is the duty of the appellate courts to see to it that every assistance is extended to the courts of the [state] so that orders are meticulously carried out as otherwise the dignity of the judiciary, the

majesty of the law and its enforcement are clearly undermined.

*Commonwealth v. Beemer,* 200 Pa.Super. 103, 188 A.2d 475, 476 (1962). Although *Beemer* did not present a situation where the court was acting sua sponte, the court's reasoning applies with equal force to a sua sponte dismissal. Given the duty of the appellate courts to protect the integrity of the judiciary, it would be bizarre if our ability to do so were severely restricted by a requirement that we could only dismiss a contemnor's appeal if favored with a motion from an appellee. Thus, we believe it is well within this court's discretionary power to dismiss Thomas's appeal sua sponte.

## CONCLUSION

Thomas's long-standing failure to comply with the trial court's order and his present inability to do so require this court to dismiss his appeal. We find no merit in his claims that the contempt order was issued in a separate action or that his incarceration somehow precludes this court from dismissing his appeal. Therefore, the instant appeal is dismissed.

BILLINGS and GARFF, JJ., concur.

---

**6.** This same line of reasoning has been followed in appellate court decisions affirming a trial court's sua sponte dismissal of a contemnor's action. *See Hahn v. Hahn,* 144 N.E.2d 499, 501 (Ohio App.1956) (affirming the trial court's sua sponte dismissal of a contemnor's motion for a change of custody). *See also Botany v. Heerin-* ga, 521 F.Supp. 1369, 1369–70 (E.D.Wis.1981) (dismissing plaintiff's civil action sua sponte and with prejudice due to plaintiff's criminal contempt conviction).