Richard W. VON HAKE, Trustee of the
Von Hake 1987 Trust, Plaintiff and
Appellee,

v.

Harry Edward THOMAS, aka
Ed Thomas, Defendant
and Appellant.

No. 920643–CA.

Court of Appeals of Utah.

Aug. 12, 1994.

Shawn D. Turner (argued), Brown, Larsen, Jenkins & Halliday, Salt Lake City, for appellant.

H. Ralph Klemm (argued), Bountiful, for appellee.

Before ORME, Associate P.J., and BENCH and BILLINGS, JJ.

## OPINION

ORME, Associate Presiding Judge:

Harry Edward Thomas appeals the summary judgment entered in favor of appellee, Richard W. Von Hake. We previously dismissed Thomas's appeal because he was in contempt of an earlier trial court order. The Utah Supreme Court granted certiorari and remanded the case to us for limited briefing and reconsideration. Upon reconsideration, we again hold that Thomas's appeal should be dismissed, but such dismissal is without prejudice to Thomas's right to move for reinstatement in due course.

## FACTS [1]

In the original suit, appellee's father and predecessor in interest, Richard A. Von Hake, won a judgment against Thomas in a fraud action. On appeal, the Utah Supreme Court affirmed the substantial judgment entered against Thomas. *See Von Hake v. Thomas*, 705 P.2d 766 (Utah 1985) (*Von Hake I*).

Because of Thomas's failure to satisfy this judgment, Von Hake initiated supplemental proceedings to discover information about Thomas's property and income. In the course of these supplemental proceedings, the trial court ordered Thomas to appear at a show-cause hearing on November 4, 1983, and to produce certain financial documents. On the scheduled date, Thomas failed to appear. After some delay, the show-cause hearing was rescheduled for May 4, 1984. Thomas again failed to appear for the hearing. Even though Thomas was not present, the hearing proceeded, with Thomas being represented by counsel. At the conclusion of the hearing, the court found Thomas in contempt for his failure to comply with the court's orders.

On May 14, 1984, the court entered an order against Thomas determining him to be in contempt for his failure to appear and his failure to produce the requested documents. The court sentenced Thomas to thirty days in jail. Thomas then appealed the contempt order. The Utah Supreme Court reversed the civil contempt entered against Thomas for his failure to produce the documents, but affirmed the criminal contempt sentence which addressed Thomas's failure to appear. *Von Hake v. Thomas*, 759 P.2d 1162, 1173 (Utah 1988) (*Von Hake II*). The Supreme

---

1. Because this case has been in process for over ten years, we will only discuss the facts that are pertinent to the issue on remand. A full discussion of the facts concerning the underlying judgment originally entered against Thomas can be found in *Von Hake v. Thomas*, 705 P.2d 766 (Utah 1985). For facts pertaining to the con-

tempt order, a full discussion can be found in *Von Hake v. Thomas*, 759 P.2d 1162 (Utah 1988). Additional information is provided in our prior opinion that dismissed this appeal. *See Von Hake v. Thomas*, 858 P.2d 193 (Utah App.1993), *remanded*, No. 930457 (Utah Dec. 1, 1993).

Court remanded "for execution of the thirty-day sentence." *Id.*

Despite the Supreme Court's disposition, Thomas has never served the thirty-day sentence for his contempt. Nor is there any indication that Thomas has made any attempt to satisfy the outstanding contempt order. In fact, at the present time it is physically impossible for him to serve the contempt sentence. He is currently incarcerated in the federal penitentiary in Boron, California, where he is serving a five-year sentence for tax fraud.

In 1992, Von Hake began proceedings to renew the judgment affirmed in *Von Hake I*. *See Von Hake v. Thomas*, 858 P.2d 193, 194 (Utah App.1993) (*Von Hake III*), *remanded*, No. 930457 (Utah Dec. 1, 1993). Before trial in the renewal proceeding commenced, the trial court entered summary judgment for Von Hake. Thomas appealed the summary judgment. Initially, this court dismissed Thomas's appeal because he had not satisfied the contempt sanction. *Von Hake III*, 858 P.2d at 198. Thomas then sought review of our decision by the Utah Supreme Court. Having granted certiorari, 868 P.2d 95, the Supreme Court remanded the case solely for our re-examination of the narrow issue of whether or not Thomas's appeal should be dismissed because of his outstanding contempt sentence.[2]

## ISSUES

Thomas argues that his appeal should not be dismissed for several reasons. Thomas claims that *D'Aston v. D'Aston*, 790 P.2d 590 (Utah App.1990), requires a mandatory thirty-day grace period before an appeal can be dismissed because of an outstanding contempt order. Thomas further argues that his appeal should not be dismissed because the defense of impossibility of performance applies in this case, and it is physically impossible for Thomas to satisfy the contempt order because he is in prison. Finally,

Thomas claims that dismissing his appeal would violate both the United States and Utah Constitutions because such dismissal would constitute an excessive penalty.

## *D'ASTON* REVISITED

Thomas asserts that this court should not dismiss his appeal based on his claim that *D'Aston v. D'Aston*, 790 P.2d 590 (Utah App. 1990), requires the court to give contumacious litigants a thirty-day grace period before dismissing. However, we believe that a close examination of *D'Aston* suggests a less rigid rule.

To begin, Utah case law contains little discussion on the issue of contumacious litigants and the status of their appeals. In fact, *D'Aston* was the first Utah case to deal with the dismissal of a civil appeal where the appellant was in contempt. *See id.* at 593. In *D'Aston*, a wife appealed her divorce decree while in contempt for not complying with an earlier trial court court ordered dismissal of the wife's appeal unless she brought herself within the process of the trial court within thirty days. *Id.* at 595.

Before coming to its decision, the *D'Aston* court made a thorough review of how other jurisdictions treat appeals brought by contumacious litigants. *See id.* at 593–94. The court explained that there are three approaches used in other jurisdictions. The strictest approach is to dismiss the appeal without allowing the contumacious litigant time to comply with the trial court's order. *See id.* at 593 (citing several cases which dismissed appellant's appeal without allowing any time for compliance). A more generous approach allows such parties a fixed time in which to comply with the trial court's order before the appellate court dismisses their appeal. *See id.* (listing cases with grace periods ranging from ten to thirty days). A final approach employed in other jurisdictions is to fashion a remedy appropriate to

2. In a minute entry, the Supreme Court remanded and instructed this court as follows:

Petitioner Thomas' petition for writ of certiorari is granted on the issue that he was unable to brief the issue of why his appeal should not be dismissed. On that limited issue, the case is remanded to the court of appeals with instructions to allow parties to brief the issue why the appeal should not be dismissed. No[ ] further briefing before this court is required, and the court of appeals' decision is affirmed in all other respects.

the circumstances of the particular case. *See id.* at 593–94.

Following its examination of other jurisdictions, the *D'Aston* court chose the approach which allowed a party a reasonable opportunity to purge its contempt before the appeal is dismissed. The court stressed that it desired to adopt an approach which provided "the flexibility to fashion the terms under which the non-complying party may purge its contempt rather than necessarily ordering the enforcement of the judgment." *Id.*

*D'Aston* affirms the court's discretionary authority to dismiss the appeals of contumacious litigants under terms which are fair and just given the circumstances of a particular case. Under *D'Aston*, a court has the discretion to determine what is a reasonable approach in dealing with a contumacious litigant who, even while disregarding the judiciary's contempt process, nonetheless wishes to avail himself or herself of judicial procedures thought to be beneficial. Although the *D'Aston* court chose to allow a thirty-day grace period, the court did not intend to require this grace period as mandatory in every circumstance.

■ Turning to the case at hand, we determine what constitutes a reasonable approach for dealing with Thomas's situation. As expressed above, each case must be examined on its own specific facts to determine what is reasonable. In this case, such facts include not only that Thomas is in prison and unable to serve his contempt sentence, but also that for many years prior to his federal incarceration he chose to evade that contempt sentence without justification. With these differing facts in mind, it would be difficult to argue that a thirty-day grace period as allowed in *D'Aston* would be appropriate in the present case.

The *D'Aston* court granted the contemnor thirty days to remedy the situation because this time period was a reasonable and appropriate amount of time based on the facts of that case. In addition, the contemnor in *D'Aston* offered no reason why she could not

comply nor why the court should grant a longer time. *See* 790 P.2d at 594. The thirty-day period was basically a discretionary choice of the court that appeared a fair and reasonable period for the party to comply.[3] It would be pointless for this court to grant Thomas a thirty-day grace period—or even a ninety-day or 180–day grace period—before dismissing his appeal. Unlike in *D'Aston*, the contemnor here is physically unable to discharge his contempt responsibility anytime soon because of his out-of-state incarceration.

Additionally, it would be administratively inefficient to stay Thomas's appeal indefinitely. His appeal would remain pending, notwithstanding the uncertainty that he would ever serve his contempt sentence, and require ongoing monitoring by the court. Accordingly, it would not be reasonable to stay Thomas's appeal until such time as he is released from prison and complies with the contempt order.

We, therefore, again hold that Thomas's appeal should be dismissed outright, with no predismissal grace period, but we make that dismissal without prejudice, subject to reinstatement on reasonable terms and conditions. We grant Thomas ninety days following his actual release from federal prison to file a motion to reinstate his appeal, such motion to be accompanied by proof that as of that time he has served the outstanding contempt sentence. This approach is consistent with *D'Aston*'s basic objective of providing one last chance to achieve compliance with outstanding contempt orders before dismissing an appeal with finality.

Moreover, this approach is consistent with *Hardy v. Morris,* 636 P.2d 473 (Utah 1981), and *State v. Tuttle,* 713 P.2d 703 (Utah 1985). These two cases, involving prisoners who had escaped while their appeals were pending, dealt with an analogous issue in the context of criminal appeals. In both cases, the Utah Supreme Court concluded that the escaped prisoners' appeals should be dismissed. *Tuttle,* 713 P.2d at 704; *Hardy,* 636 P.2d at 474. In *Tuttle,* the Supreme Court added

---

3. The court's disposition proved workable. The contemnor purged herself of her contempt and this court proceeded to the merits of her appeal.

*See D'Aston v. D'Aston,* 808 P.2d 111 (Utah App. 1990).

that once the prisoner returned to custody his appeal would be reinstated. 713 P.2d at 705. Like the escaped prisoners in *Tuttle* and *Hardy,* Thomas seeks to avail himself of an appeal while at the same time having avoided the process of law. Similarly, Thomas's appeal should be turned away until he brings himself within the process of the trial court.

## IMPOSSIBILITY

■ Thomas also argues that it would be inappropriate for this court to dismiss his appeal when it is physically impossible for him to comply with the contempt order. Because of this inability to comply, Thomas reasons that the defense of impossibility of performance should apply. We disagree and believe that Thomas cannot raise the impossibility defense at this late stage of the proceeding.

In *Bradshaw v. Kershaw,* 627 P.2d 528 (Utah 1981), the Utah Supreme Court provided a detailed discussion of when and where the impossibility defense applies in the contempt context. *Id.* at 530–31. As outlined by the Supreme Court, the use of the defense varies depending on the type of contempt sanction imposed and the time when it is offered. *Id.* The *Bradshaw* court listed three categories of possible contempt sanctions. *Id.* at 530. They include: *"punishment* of the contemnor by a fine and/or imprisonment," *"indemnification* of a damaged party by ordering the contemnor to pay him money for actual loss or injury," and *"coercion* of the contemnor by imprisoning him until he shall perform." *Id.* (emphasis in original).

For example, the *Bradshaw* court stressed that the impossibility defense is always available for a coercive sanction because it would be futile "to try to coerce an act that the contemnor has no present ability to perform." *Id.* at 531. Alternatively, "impossibility of performance should never be a defense to the sanctions of punishment or indemnification if the ground of impossibility is directly traceable to the contemnor's own deliberate acts." *Id.* With these definitions and distinctions in mind, we must focus on what type of sanction is actually at issue here.

Thomas strains to move the classification of his sanction from punishment to coercion by focusing not on what the trial court imposed—incarceration as punishment for a prior act of contempt—but on what he perceives this court is doing, i.e., trying to coerce his compliance with the trial court's order with the leverage of dismissing his appeal. Believing that the dismissal is a coercive sanction, Thomas concludes that he should be able to raise the impossibility defense at any time, including now.

However, we conclude that our focus under *Bradshaw* should be on the essence of Thomas's contempt sanction. The only purpose of Thomas's criminal contempt conviction was to impose a punitive sanction. *See Von Hake II,* 759 P.2d at 1168 (Thomas's criminal contempt imposed in order to vindicate trial court's authority by punishing him). As the Supreme Court explained in *Bradshaw,* the objective of a punitive sanction "is simply to assign consequences for a prior act" whereas the coercive sanction imposes open-ended imprisonment of the contemnor in an effort to induce a decision to purge ongoing contempt of the court. *Bradshaw,* 627 P.2d at 531. Obviously, the trial court did not intend for the criminal contempt sentence to coerce Thomas into any particular action, but was intended to punish him for twice failing to appear for the show-cause hearing.

Accordingly, we conclude that Thomas may not raise the impossibility defense because his contempt conviction was a punitive sanction, and according to the *Bradshaw* rule, the impossibility defense does not apply if the impossibility now existing is due to the contemnor's own acts. *Id.* at 530. Thomas's incarceration is what makes it impossible for him to serve his contempt sentence, and his incarceration is due solely to his own acts of committing tax fraud and getting caught. Thus, because it was not impossible for Thomas to serve his contempt sentence at the time it was imposed, it does not matter that it is impossible for him to serve it now.

## CONSTITUTIONAL RIGHT OF APPEAL

■ , Finally, Thomas contends that dismissal of his appeal violates his constitutional

rights, in particular the protection provided under both the United States Constitution, Amendment VIII, and Article I, section 9, of the Utah Constitution. Specifically, Thomas argues that dismissal would be a form of excessive penalty and would constitute "unnecessary rigor" of an individual who is in prison. *See* U.S. Const. amend. VIII; Utah Const. art. I, § 9. We disagree.

The dismissal does not violate Thomas's constitutional rights. The court admittedly dismisses Thomas's appeal, but this dismissal does not terminate his right to appeal. The *D'Aston* court expressed it as follows:

> [W]e do not deny appellant her right to an appeal under Utah Const. art. VIII, § 5, but rather insist [the contemnor] must submit herself to the jurisdiction of the trial court and satisfy that court's concerns before she may exercise that right.

*D'Aston,* 790 P.2d at 594.

By granting ninety days following his release to reinstate his appeal, providing only that Thomas serve his contempt sentence, the court has preserved Thomas's right to appeal. As in *D'Aston,* this court is simply requiring Thomas to comply with an earlier trial court order before he is allowed to seek the appellate court's assistance. Whether Thomas's right to appeal is ultimately exercised is entirely up to him. If he serves his long-outstanding sentence, his right to appeal will be preserved. If he chooses to again evade the sentence after release from prison, his right to appeal will indeed be lost. But that loss would not be in violation of his rights; rather, it would be due only to his own conscious decision to waive his right to appeal rather than bring himself into compliance by serving his contempt sentence.

## CONCLUSION

Thomas's appeal is dismissed, such dismissal being without prejudice to reinstatement as provided in this opinion.

BENCH and BILLINGS, JJ., concur.