1999 Utah Ct. App. 356

**Oletta CUMMINGS, Plaintiff and Appellee,**

v.

**Clyde Kay CUMMINGS, Defendant and Appellant.**

**No. 981307–CA.**

Court of Appeals of Utah.

Dec. 9, 1999.

fees on appeal. As a result, we review the action of the trial court regarding attorney fees for that limited purpose only.

M. Byron Fisher, Fabian & Clendenin, Salt Lake City, for Appellant.

David A. McPhie, Salt Lake City, for Appellee.

Before WILKINS, P.J., and BENCH and ORME, JJ.

## OPINION

BENCH, Judge:

¶ 1 Appellant appeals from the Amended Findings of Fact and Conclusions of Law Upon Remand that were entered by the trial court subsequent to appellant's first appeal to this court in 1995. Appellant argues that the trial court divided the marital estate unequally without explanation. Appellee urges, among other things, that an equal distribution was achieved and that we should dismiss this appeal in any event because appellant comes to this court with unclean hands. Appellee also seeks an award of costs and attorney fees incurred in defending against this appeal. We affirm and award appellee her costs and fees.

## BACKGROUND

¶ 2 Appellant and appellee were married in 1954. Together they formed C. Kay Cummings Candy, Inc. in 1965. Appellee filed for divorce in 1992, and a decree of divorce was entered in 1995. The division of marital assets, particularly the business and its associated land and building, are at the heart of these prolonged and contentious divorce proceedings.

¶ 3 After the decree of divorce was entered in 1995, appellant appealed to this court, seeking review of "the trial court's orders striking his answer, entering default judgment, and dividing the marital estate in response to his long-term failure to comply with court orders pertaining to discovery and other matters." *Cummings v. Cummings*, No. 950504, slip op. at 1 (Utah Ct.App. Dec. 19, 1996). In our short unpublished memorandum decision, we affirmed the trial court almost entirely. *See id.* We remanded the case, however, for the limited purpose of allowing the trial court to make additional findings of fact on the following two narrow issues: "the treatment of the retained earnings in valuing the business, and the valuation of the business itself." *Id.* As allowed by our decision, the trial court thereafter received additional testimony and evidence on the narrow issues remanded, and modified its prior finding concerning the value of the business. The trial court also determined

that retained earnings had no separate value apart from the value of the business itself. To even up the property distribution in view of its new findings, the court awarded appellant a one-quarter interest in the business building previously awarded in its entirety to appellee. This second appeal followed.

¶ 4 While the first appeal in this matter was pending, an $800,000 mortgage obligation on the business building became due. Under the original decree of divorce, the building was awarded to appellee, while appellant was ordered to make payments thereon. Appellant did not make the required payments, and foreclosure became imminent. The trial court ordered appellant to obtain financing to avoid foreclosure. Appellant obtained an eighteen month interest only loan, but at the end of the eighteen month period, he refused to pay the balloon payment then due, forcing the loan into default. Appellee then sought and received approval from the trial court to refinance the building herself. In order to close the loan which appellee had arranged, appellant needed to sign the loan papers. The trial court ordered him to sign the loan papers, but he refused to do so.

¶ 5 Appellant was held in contempt of court, sentenced to twenty days incarceration, and monetarily sanctioned. Due to appellant's refusal to obey court orders concerning the property, financing was not secured and the building was sold to avoid foreclosure. Appellee thereafter obtained two judgments against appellant, totaling more than $262,000, which remain unsatisfied.

¶ 6 In an effort to collect on these judgments, appellee conducted a deposition on March 9, 1999 to determine what assets appellant had that are subject to execution. At the deposition, appellant refused to answer numerous questions and appellee was forced to file a motion to compel. The motion was granted because appellant's proffered reasons for not answering the questions were disingenuous. Appellant was ordered to again submit himself for deposition. After sending notice of the deposition, appellee was informed by counsel for appellant that appel-

lant had left the state, that his whereabouts were unknown, and that counsel was not in communication with appellant and thus would not accept service of the notice of deposition for his client. At oral argument before this court, counsel for appellant confirmed that appellant has indeed left the state, but indicated that he has become settled, can now be contacted, and is available to return to Utah as necessary.

## ANALYSIS

### I. Appellee's Request For Dismissal

■ ¶ 7 This court has previously determined that it is permissible to dismiss the appeals of contumacious appellants. In *D'Aston v. D'Aston*, 790 P.2d 590 (Utah Ct. App.1990), the appellee filed a motion to dismiss the appeal "on the grounds that [appellant] was currently in contempt of the trial court's order and had secreted herself, refusing to submit to the process of the district court." *Id.* at 591. We held that "if appellant persists in secreting herself in violation of the trial court's orders, her appeal will be dismissed [in thirty days]." *Id.* at 595.[1]

¶ 8 In *Von Hake v. Thomas*, 858 P.2d 193 (Utah Ct.App.) (*Von Hake I*), *cert. granted*, 868 P.2d 95 (Utah), *remanded*, No. 930457 (Utah Dec. 1, 1993), we dismissed the appeal outright, giving no grace period such as the thirty days allowed in *D'Aston*. The appellee in *Von Hake I* had initiated supplemental proceedings in the trial court to discover the whereabouts and extent of appellant's assets in order to collect upon an underlying fraud judgment. *See Von Hake I*, 858 P.2d at 193–94. During the course of the supplemental proceedings, the appellant was held in contempt of court because he "had not complied with [the court's] order for production and had used improper and dilatory tactics to frustrate its orders and to avoid appearing in court." *Id.* at 194. We rejected appellant's contention that dismissal was inappropriate because the renewal action was different from the action in which the contempt occurred. *See id.* at 195. We refused to con-

---

1. Ultimately, the *D'Aston* appellant gave notice of her compliance, and the appeal was heard on its merits. *See D'Aston v. D'Aston*, 808 P.2d 111, 112 (Utah Ct.App.1990).

sider a renewal proceeding to be a separate action because "the connection between the original action and the renewal action in the instant case is simply too close to ignore." *Id.* at 196. We held that "the *D'Aston* rule is applicable," *id.*, and dismissed the appeal outright (without allowing a grace period) due to appellant's "long-standing status as a contemnor of the trial court." *Id.* at 193.[2]

¶ 9 In *Von Hake v. Thomas*, 881 P.2d 895 (Utah Ct.App.1994) (*Von Hake II* ), we reaffirmed our dismissal in *Von Hake I*. Specifically, we confirmed that the thirty-day grace period established in *D'Aston* was not mandatory:

> Under *D'Aston*, a court has the discretion to determine what is a reasonable approach in dealing with a contumacious litigant who, even while disregarding the judiciary's contempt process, nonetheless wishes to avail himself or herself of judicial procedures thought to be beneficial. Although the *D'Aston* court chose to allow a thirty-day grace period, the court did not intend this grace period as mandatory in every circumstance.

*Id.* at 898. After holding that "each case must be examined on its own specific facts to determine what is reasonable," we considered the facts of the case, and dismissed the appeal "outright, with no predismissal grace period." *Id.* We made the dismissal "without prejudice, subject to reinstatement on reasonable terms and conditions" because that is "consistent with *D'Aston*'s basic objective of providing one last chance to achieve compliance with outstanding contempt orders before dismissing an appeal with finality." *Id.*[3]

■ ¶ 10 Turning to the instant case, it is clear that appellant's contemptuous behavior resulted in the loss of the building. Appellee obtained substantial money judgments against appellant as a result, and those judgments remain unsatisfied. Moreover, appellant has now left the state in the face of a court order requiring him to be deposed in connection with appellee's efforts to collect upon these judgments. The connection between the enforcement efforts and the divorce action itself is "simply too close to ignore." *Von Hake I*, 858 P.2d at 196.

¶ 11 Because the building is now lost, the only way appellant can remedy his contemptuous behavior is by satisfying appellee's judgments against him. Hence, we could elect to dismiss this appeal under *D'Aston* and its progeny and condition reinstatement of this appeal upon appellant's submission to this court of proof that he has satisfied the judgments held by appellee. However, dismissal is not necessary in this matter because the appeal can be easily affirmed on the merits.

## II.   Distribution of the Marital Estate

■ ¶ 12 On remand after the first appeal, the trial court properly addressed the two issues that we remanded, and determined: (1) that the retained earnings did not have value separate from the business, and (2) that the value of the business was $481,816. Because this was a reduction from the original valuation of $600,000, an adjustment in the overall distribution was necessary to ensure an equal division of the marital estate. This adjustment was made by giving appellant a twenty-five percent interest in the building in which he previously had no interest.

¶ 13 In this appeal, appellant has not challenged the trial court's findings on either of the two issues we remanded or the award to him of an interest in the building, which are the only matters that appellant could properly address in this second appeal. Instead, appellant addresses the overall distribution of the marital estate.

¶ 14 Appellant's chief contention is that the trial court did not meet its objective of divid-

---

2. The Utah Supreme Court granted certiorari in *Von Hake I, see Von Hake v. Thomas*, 868 P.2d 95 (Utah 1993), and then remanded to this court by minute entry order, No. 930457 (Utah Dec. 1, 1993), instructing us to allow the parties to brief the issue of why the appeal should not be dismissed. The supreme court affirmed our decision in *Von Hake I* in all other respects. *See id.*

3. We granted appellant "ninety days following his actual release from federal prison to file a motion to reinstate his appeal, such motion to be accompanied by proof that as of that time he has served the outstanding contempt sentence." *Von Hake II*, 881 P.2d at 898.

ing the marital estate equally, i.e., 50/50. Appellant asserts that the distribution after remand is closer to 66/34 in favor of appellee, and that the trial court did not adequately explain why it did not meet its stated objective of dividing 50/50. We disagree. The distribution made in the Amended Findings of Fact and Conclusions of Law Upon Remand is almost exactly 50/50.[4]

¶ 15 Appellant's attempt to demonstrate unequal distribution is based upon a chart that was admitted at the trial on remand. This chart contains information concerning other assets, which were not to be considered in the remand proceedings. *See, e.g., Slattery v. Covey & Co., Inc.,* 909 P.2d 925, 928 (Utah Ct.App.1995) (stating that trial court, on remand, can only address issues "left open" by appellate decision). Thus, although admitted into evidence, the chart was immaterial to the trial court's decision. Simply stated, the trial court properly considered only the two issues we remanded, and the appellant has not made any argument concerning the trial court's decision on these issues. And, in any event, the record reflects that the trial court divided the marital estate equally. Accordingly, we affirm the decision of the trial court.

### III. Costs and Attorney Fees

 ¶ 16 Appellee seeks an award of costs and attorney fees incurred in defending this appeal. Not only was appellee awarded attorney fees in the original decree of divorce, but she has since been awarded fees eight additional times in subsequent proceedings. Because appellee was awarded fees below and has prevailed on appeal, we award appellee her costs and attorney fees reasonably incurred on appeal. *See, e.g., Burt v. Burt,* 799 P.2d 1166, 1171 (Utah Ct.App.1990) ("Ordinarily, when fees in a divorce were awarded below to the party who then prevails on appeal, fees will also be awarded to that party on appeal."). Accordingly, we remand to the trial court for the limited purpose of determining the amount of costs and attor-

ney fees reasonably incurred by appellee in defending this appeal.

### CONCLUSION

¶ 17 Although this appeal could appropriately be dismissed by reason of appellant's contempt, we have elected—in the interest of finality—to dispose of it on the merits. Appellant has not challenged the trial court's determinations on the two narrow issues we remanded, which are the only issues properly appealable in this second appeal. Additionally, the distribution of the estate is almost exactly 50/50. Hence, we affirm the decision of the trial court. Appellee is entitled to her costs and fees reasonably incurred on appeal. We remand the case to the trial court for the purpose of determining the amount of such costs and fees.

¶ 18 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and GREGORY K. ORME, Judge.

---

4. The trial court's Amended Findings of Fact and Conclusions of Law Upon Remand contains a detailed breakdown of the valuation of the divided estate. The amounts in this valuation, when totaled, give $785,520 to appellee, and $778,962 to appellant. This division equates to 50.2% for appellee and 49.8% for appellant.